1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

10  ALMA EYRE, *et al.*,

11                              Plaintiffs,

            v.

12  STILLWATER INSURANCE
    COMPANY,

13

14                              Defendant.

CASE NO. 3:24-cv-06029-GJL

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT

15          This matter is before the Court on the parties' consent and on Cross-Motions for

16  Summary Judgment. Dkts. 11, 18, 20.

17          Plaintiffs Alma Eyre and Pem Choki bring suit against Defendant Stillwater Insurance

18  Company, their homeowner policy insurance company, for damages to their home caused by a

19  burst pipe ("the Loss"). Dkt. 1-3. Plaintiffs allege Defendant breached its contractual obligations

20  and violated Washington law when it wrongfully denied their claim related for the Loss. *Id*. at

21  12–13.

22          Defendant filed a Motion for Summary Judgment on April 22, 2025, requesting the Court

23  find, as a matter of law, that there is no coverage for the Loss because Plaintiffs' home was

24

1    unoccupied for more than 60 days ("Occupancy Exclusion") and Plaintiffs did not take

2    reasonable care to shut off the water and drain all systems and appliances of water ("Frozen

3    Pipes Exclusion"). Dkt. 18. In their response to Defendant's Motion for Summary Judgment,

4    Plaintiffs filed a Motion seeking partial summary judgment related to the Occupancy Exclusion,

5    and requesting the Court deny Defendant's Motion with respect to the Frozen Pipes Exclusion.

6    Dkt. 20. For the reasons set forth below, Defendant's Motion for Summary Judgment (Dkt. 18) is

7    **GRANTED** and Plaintiff's Motion for Partial Summary Judgment (Dkt. 20) is **DENIED**.

8    **I.    BACKGROUND**

9    The parties have both submitted a statement of facts in connection with their Motions.

10   Dkts. 18, 20. The facts are undisputed except as noted.

11   **A.    Background on Insurance Claim**

12   Defendant issued homeowner policy NP 3052746 (the "Policy") to Plaintiffs to cover

13   their property located at 14917 Prairie Vista Loop SE, Yelm, Washington (the "Property"). Dkt.

14   19-1, Ex. A (Homeowner's Policy). The Policy's effective date was April 7, 2023, with an

15   expiration date of April 7, 2024. *Id*. at 4. The Policy was for insurance coverage that included,

16   but was not limited to, protection to the Property against water damage, with exceptions. Dkt.

17   19-1, Ex. A; Dkt. 1-3.

18   On November 13, 2023, Plaintiffs left the Property for an international trip. Dkt. 18 at 5.

19   While they were gone, Mr. Eyre's father had a key to access the inside of the home, but Plaintiffs

20   did not arrange for anyone to stay overnight or otherwise reside at the Property. *Id*.

21   Prior to leaving the Property, Mr. Eyre turned off the furnace "to save money, since

22   nobody was going to be in the home." Dkt. 19-2 at 16, Ex. B (Dep. A. Eyre). He did not seek

23

24

1    advice other than from his wife or speak with anyone about the wisdom of turning off the

2    furnace when leaving your home for an extended period. *Id*.

3        Mr. Eyre also turned off "one of the valves in our home, and I thought I was turning off

4    the water to the home, when I did that." *Id*. That valve was in the garage, and "the only valve that

5    I knew about and could see." *Id*. at 17. When asked at his deposition whether he thought he

6    turned off the water in his home before he left, Mr. Eyre stated, "I did turn off the faucet, but I

7    learned that was probably not the right valve to turn off. I learned about that only later." *Id*. To

8    that end, Mr. Eyre stated, "[A]fter the loss, I called plumbers out to my house to do different

9    inspections, and one of them . . . pointed out [ ] other valves that I should have turned off." *Id*.

10        After Mr. Eyre turned off the valve in the garage, Ms. Choki flushed the toilet and turned

11    the kitchen sink on and off. Ex. 19-3 at 14–15, Ex. C (Dep. P. Choki). Ms. Choki stated that she

12    turned on the sink after Mr. Eyre turned off the valve "[s]o that whatever . . . water is in the pipe

13    left, it was out of the sink then." *Id*. However, when she turned on the sink, the water did not stop

14    running before she turned it off. *Id*. She believed the valve turned off the water, but stated, "We

15    are first-time home buyers. We don't know anything." *Id*. at 15. Later, after the Loss, Ms. Choki

16    learned that the valve Mr. Eyre turned off "is the one that goes outside, not inside, and we only

17    saw or know of one that we think." *Id*. at 17.

18        Sometime in January 2024, the Property suffered damage when a pipe burst resulting in

19    flooding to the home. Dkt. 19-2 at 30–31, Ex. B. Based on the water meter readings provided by

20    the water company, Mr. Eyre stated that the pipe burst and the spike in water usage occurred on

21    January 17, 2024. *Id*. at 31. Plaintiffs learned of the Loss while they were abroad from messages

22    they received from a neighbor and the City of Yelm Police Department. *Id*. at 21. The Police

23    Department informed them that police had entered the home because there was a large amount of

24

water pouring out of the home. *Id.* Plaintiffs called Mr. Eyre's father to visit the Property and capture images of the Loss. *Id.* Plaintiffs also contacted Defendant Stillwater. *Id.*

After the Loss, several professionals examined the damage and gave differing opinions as to the cause. *Id.* at 26–29. One plumber told Mr. Eyre the cause of the damage was either a freezing or a faulty pipe, but was not sure. *Id.* at 27. An engineer opined that the damage was likely caused by a freezing pipe. *Id.* at 28.

Defendant Stillwater assigned Claim Number HO0001089320 to the claim filed by Plaintiffs. Dkt. 18 at 7. On January 29, 2024, Defendant denied the Claim. *Id.* On June 6, 2024, Plaintiffs submitted a supplement to the Claim detailing the estimates they received for repairs to the Property. *Id.* On August 13, 2024, Defendant affirmed the denial of the Claim. *Id.*

**B.    Language of the Policy**

The Policy contains the following provisions relevant to this case:

**HOMEOWNERS 3 – SPECIAL FORM – WASHINGTON AGREEMENT**

**AGREEMENT**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

**DEFINITIONS**

A. In this policy, "you" and "your" refer to:
   1. The "Named Insured" shown in the Declarations; and
   2. The spouse, if a resident of the same household, including a domestic partner registered under Washington law, if a resident of the same household.
   "We", "us" and "our" refer to the Company providing this insurance.

***

B.  In addition, certain words and phrases are defined as follows:

***

9. "Insured location" means:

a. The "residence premises";
b. The part of other premises, other structures and grounds used by you as a residence; and
   (1) Which is shown in the Declarations; or
   (2) Which is acquired by you during the policy period for your use as a residence;
      c. Any premises used by you in connection with a premises described in a. and b. above;
         d. Any part of a premises:
   (1) Not owned by an "insured"; and
   (2) Where an "insured" is temporarily residing;

***

12. "Property damage" means physical injury to, destruction of or loss of use of tangible property.

***

15. "Residence premises" means:
   a. The one-family dwelling where you reside;

***

## SECTION 1—PROPERTY COVERAGES

### A.  Coverage A—Dwelling

1. We cover:
   a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling;

***

### E. Additional Coverages

***

### 2. Reasonable Repairs
   a. We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

***

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 5

1

**SECTION 1—PERILS INSURED AGAINST**

2

**A. Coverage A – Dwelling And Coverage B – Other Structures**

3
   1. We insure against direct physical loss to property described in Coverages A and B.
   2. We do not insure, however, for loss:
4
       a. Excluded under Section 1 – Exclusions;

5                                           ***

6
       c. Caused by:
7          (1) Freezing of a plumbing, heating, air conditioning or automatic fire protective
           sprinkler system or of a household appliance, or by discharge, leakage or
           overflow from within the system or appliance caused by freezing. This provision
8          does not apply if you have used reasonable care to:
           (a) Maintain heat in the building; or
9          (b) Shut off the water supply and drain all systems and appliances of water.
           However, if the building is protected by an automatic fire protective sprinkler
10         system, you must use reasonable care to continue the water supply and maintain
           heat in the building for coverage to apply. For purposes of this provision, a
11         plumbing system or household appliance does not include a sump, sump pump or
           related equipment or a roof drain, gutter, downspout or similar fixtures or
12         equipment; . . . .

13  Dkt. 19-1 at 8–10; 13–14; 17–18, Ex. A.

14       The October 2007 Occupancy Endorsement (Endorsement A6122 E1007-FNIS) contains

15  the following language:

16       **THIS ENDORSEMENT RESTRICTS OR ABRIDGES THE RIGHTS OF THE
           INSURED. PLEASE READ IT CAREFULLY.**
17

18  It is a condition of this policy that any vacancy or unoccupancy of the described building
    after the inception date of the policy must be reported to the company.

19  It is understood and agreed that this Company shall not be liable for loss occurring while a
    described building, whether intended for occupancy by owner or tenant, is unoccupied
20  beyond a period of sixty consecutive days.

21  "Vacant" or "Unoccupied" means neither you nor your guest has slept overnight in the
    dwelling for a period of 30 days.
22

23  Dkt. 19-1 at 40, Ex. A.

24

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 6

1

**C.      Procedural History**

2      Plaintiffs' Complaint was originally filed in the Superior Court of the State of

3 Washington for Thurston County on September 5, 2024. Dkt. 1. Defendant Stillwater removed

4 the case to this Court on December 16, 2024. *Id*.

5      Pending before the Court is Defendant Stillwater's Motion for Summary Judgment and

6 Plaintiffs' Partial Motion for Summary Judgment. Dkts. 18, 20. Defendant requests in its Motion

7 that the Court find, as a matter of law, that (1) there is no coverage for the Loss because the

8 home was unoccupied for more than 60 days, and (2) Plaintiffs did not take reasonable care to

9 shut off the water and drain all systems and appliances of water. Dkt. 18 at 5.

10      Plaintiffs responded in opposition to Defendant's Motion for Summary Judgment, and

11 also seek partial summary judgment in their favor. Dkt. 20. Specifically, Plaintiffs request that

12 the Court deny Defendant's Motion for Summary Judgment on both grounds asserted by

13 Defendant. *Id*. at 4. Also, they seek partial summary judgment as to the Occupancy Exclusion,

14 requesting the Court find the home was not unoccupied for more than 60 days. *Id*.

15      **II.      APPLICABLE LAW AND LEGAL STANDARD**

16      Because this Court sits in diversity jurisdiction, it will apply both Washington state

17 substantive law and federal procedural law. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S.

18 415, 427 (1996).

19      Summary judgment is appropriate when the "movant shows that there is no genuine

20 dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

21 Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The central issue is

22 "whether the evidence presents a sufficient disagreement to require submission to a jury or

23

24

1    whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at

2    251–52.

3            The moving party bears the initial burden of showing "that there is an absence of

4    evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

5    (1986). Where the moving party does not bear the burden at trial, it can carry its initial burden by

6    presenting evidence that negates an essential element of the nonmoving party's case, or by

7    establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at

8    trial. *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir.

9    2000). Where the moving party bears the burden at trial, it can meet its initial burden by

10   presenting evidence sufficient to demonstrate that no reasonable trier of fact could find for the

11   nonmoving party; the evidence presented must establish beyond controversy every essential

12   element of the claim. *Southern Cal. Gas. Co. v. City of Santa Ana*, 336 F.3d 885, 888–89 (9th

13   Cir. 2003).

14           If the moving party meets its initial responsibility, the burden then shifts to the

15   nonmoving party to establish a genuine issue of material fact for trial. *Matsushita Elec. Indus.*

16   *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). Genuine disputes are those for which

17   the evidence is such that a "reasonable jury could return a verdict for the nonmoving party."

18   *Anderson*, 477 U.S. at 257. Material facts are those which might affect the outcome of the suit

19   under governing law. *Id.* A mere scintilla of evidence is insufficient to create a factual dispute.

20   *Id.* at 252. Likewise, the nonmoving party cannot "defeat summary judgment with allegations in

21   the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v.*

22   *Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

23

24

1    Allegations based merely on the plaintiff's belief are insufficient to oppose summary

2    judgment, as are unsupported conjecture and conclusory statements. *Id.*; *McElyea v. Babbitt*, 833

3    F.2d 196, 197–98 n.1 (9th Cir. 1987). In ruling on a motion for summary judgment, the Court

4    must draw all reasonable inferences in favor of the nonmoving party, *Matsushita Elec. Indus.*

5    *Co.*, 475 U.S. at 587, and may not weigh the evidence or make credibility determinations,

6    *Anderson*, 477 U.S. at 248.

7                            **III.    DISCUSSION**

8        As there is substantial overlap between the parties' Motions for Summary Judgment,

9    particularly with respect to the Occupancy Exclusion, the Court will address the Motions

10   together.

11       In Washington, an insurance policy is construed as a contract and given "'fair,

12   reasonable, and sensible construction as would be given to the contract by the average person

13   purchasing insurance.'" *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wn.2d 171 (2017), *as*

14   *modified* (Aug. 16, 2017) (quoting *Key Tronic Corp., Inc. v. Aetna (CIGNA) Fire Underwriters*

15   *Ins. Co.*, 124 Wn.2d 618, 627 (1994)). Every insurance contract is "construed according to the

16   entirety of its terms and conditions as set forth in the policy." *Kut Suen Lui v. Essex Ins. Co.*, 185

17   Wn.2d 703, 710 (2016). Courts in Washington do not interpret an insurance contract's phrases in

18   isolation and give effect to each provision. *Certification From United States Dist. Court ex rel.*

19   *W. Dist. of Washington v. GEICO Ins. Co.*, 184 Wn.2d 925, 930 (2016).

20       "'The touchstone of contract interpretation is the parties' intent.'" *Go2Net, Inc. v. C I*

21   *Host, Inc.,* 115 Wn. App. 73, 83–84 (2003) (quoting *Tanner Elec. Coop. v. Puget Sound Power*

22   *& Light Co.,* 128 Wn.2d 656, 674 (1996)). Washington courts follow the objective manifestation

23   theory of contracts, looking for the parties' intent as objectively manifested rather than their

24

unexpressed subjective intent. *Hearst Commc'ns, Inc. v. Seattle Times Co.,* 154 Wn.2d 493, 503 (2005). Thus, a court considers only what the parties wrote, giving words in a contract their ordinary, usual, and popular meaning unless the agreement as a whole clearly demonstrates a contrary intent. *Id.* at 504.

"If terms are defined in a policy, then the terms should be interpreted in accordance with that policy definition." *Kitsap Cty. v. Allstate Ins. Co.*, 136 Wn.2d 567, 576 (1998). "When an insurance policy defines a term, that definition applies throughout the policy." *Lui*, 185 Wn.2d at 719. "Undefined terms are to be given their plain, ordinary, and popular meaning." *Xia*, 188 Wn.2d at 171. If language in an insurance contract is susceptible to two different but reasonable interpretations, it is considered "ambiguous." *Lui*, 185 Wn.2d at 712. However, "where the policy language is clear and unambiguous, [a Washington] court will not modify the contract or create ambiguity where none exists." *Xia*, 188 Wn.2d at 182.

Here, the parties disagree as to when a property becomes "unoccupied" as defined by the Policy's Occupancy Endorsement. Resolution of this dispute does not hinge upon a genuine issue of material fact to be determined by a factfinder at trial. Rather, the Court can appropriately address the dispute at the summary judgement stage of the proceedings.

The Occupancy Endorsement sets forth that Defendant is not liable for a loss occurring while the Property is "unoccupied beyond a period of sixty consecutive days," and defines "unoccupied" as "neither you nor your guest has slept overnight in the dwelling for a period of 30 days." Dkt. 19-1 at 40, Ex. A.

Defendant argues that, because Plaintiffs' home had been unoccupied for over 60 days when the Loss occurred, coverage is excluded under the Occupancy Endorsement. Dkt. 18 at 12–13. Defendant contends that "[a] reasonable interpretation of the policy is that the thirty (30)

1    days reflect that a grace period will be given prior to application of the unoccupied language of

2    the policy, but once that time has passed, the unoccupied nature of the home relates back to the

3    last time it was occupied." Dkt. 21 at 3.

4        Plaintiffs disagree, arguing that under the definition of "unoccupied" in the Occupancy

5    Endorsement, "a dwelling only becomes 'unoccupied' upon the 31st day without an overnight

6    lodger." Dkt. 20 at 6. They continue, "[t]he dwelling does not achieve 'unoccupied' status on the

7    1st night without a lodger, or the 2nd night without a lodger, or the 30th night without a lodger—

8    but only after 30 nights without an overnight lodger." *Id.*

9        The parties factually agree that the first night Plaintiffs did not sleep at the Property's

10   home was November 12, 2023. *See* Dkt. 18 at 5; Dkt. 20 at 7. Under Plaintiffs' interpretation of

11   "unoccupied" in the Occupancy Endorsement, December 13, 2023, was 31 nights after Plaintiffs'

12   departure and the 1st day of the dwelling being "unoccupied." *See* Dkt. 20 at 7. Therefore, to

13   preclude coverage under the Occupancy Endorsement, Plaintiffs argue the Loss would have had

14   to occur when the dwelling was "unoccupied" for a period of 60 days *after* December 13, 2023,

15   or February 11, 2024. *Id.* Plaintiffs further claim that because the Loss occurred on or about

16   January 17, 2024—within that 60-day timeframe—the dwelling was not yet "unoccupied," and

17   therefore the Loss is covered under the Policy.

18       Upon review, the Court finds that Plaintiffs cannot recover under the clear and

19   unambiguous terms of their insurance policy. If Plaintiffs' home remained "unoccupied beyond a

20   period of sixty consecutive days," the insurance company is not liable for a loss occurring

21   outside that 60-day time period. The Policy leaves no doubt what "unoccupied" means. The

22   Occupancy Endorsement explicitly defines "unoccupied" as "neither you nor your guest has slept

23   overnight in the dwelling for a period of 30 days." Dkt. 19-1 at 40, Ex. A. This 30-day period is

24

part of, and not in addition to or separate from, the 60-day time period that limits coverage for a loss to a property set forth in the Policy.

There is no dispute that no one had slept in the dwelling since November 13, 2023. There is no question that the damage for which Plaintiffs now seek coverage was caused by flooding from the plumbing that occurred on or about January 17, 2024. At the time of the Loss, the home had been unoccupied for over 60 days. However, Plaintiffs are asking the Court to consider the first 30 days after November 13, 2023, as a period of occupancy in the home despite acknowledging they were not there and no one else was sleeping overnight in the home during those 30 days. This request unreasonably expands the limits of the Policy.

Further, Plaintiffs' interpretation would effectively redefine the clear and unambiguous term "unoccupied" to include an extra 30 days by which an insured can recover for a loss while their property is uninhabited. By doing so, the 60-day period set forth in the Occupancy Endorsement would be written out of the Policy thereby losing its clearly defined meaning and further ignore the plain, ordinary, and popular meaning of the term "unoccupied."

The Plaintiffs invite the Court to modify the contract or create an ambiguity where none exists. The law requires the Court to rely upon the term as defined in and applied throughout the policy in addition to the term's plain, ordinary, and popular meaning. As such, Plaintiffs cannot recover from Defendant for their Loss.

In light of the foregoing, the Court **GRANTS** Defendant Stillwater's Motion for Summary Judgment (Dkt. 18) and **DENIES** Plaintiffs' Motion for Partial Summary Judgment (Dkt. 20). Further, based on the discussion above, because the Court finds Defendant did not have a duty to provide coverage for the Loss that occurred after the home had been unoccupied beyond 60 days, the Court need not reach the issue of whether Plaintiffs used reasonable care to

maintain the heat and shut off the water supply to the home and drain all systems and appliances of water.

Dated this 26th day of June, 2025.

Grady J. Leupold
United States Magistrate Judge